## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| STATE OF NEW HAMPSHIRE,<br><br>                Plaintiff,<br><br>against<br><br>3M COMPANY, E. I. DU PONT DE NEMOURS AND COMPANY, THE CHEMOURS COMPANY L.L.C., CHEMGUARD, INC., TYCO FIRE PRODUCTS LP, BUCKEYE FIRE EQUIPMENT COMPANY, KIDDE-FENWAL, INC, and NATIONAL FOAM, INC.<br><br>                Defendants. | Civil Action No. _____<br><br>NOTICE OF REMOVAL<br><br>JURY TRIAL DEMANDED |

Defendant 3M Company ("3M"), by its attorneys, McLane Middleton, Professional Association, hereby gives notice of removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, to the United States District Court for the District of New Hampshire. As grounds for removal, 3M states as follows:

### PRELIMINARY STATEMENT

1. Plaintiff seeks to hold 3M and other Defendants liable based in part on their alleged conduct in designing, manufacturing, and selling firefighting chemical agents, aqueous film-forming foam ("AFFF"), which were developed for sale to the United States military and others pursuant to government contracts and in accordance with the military's rigorous specifications. 3M intends to assert the federal "government contractor" defense in response to Plaintiff's claims. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual

1

relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008) (affirming the removal of an action to federal court under 28 U.S.C. § 1442 when Vietnam War veterans sued the manufacturers of Agent Orange, who had contracted with the U.S. Government to produce Agent Orange for military use).

## PLAINTIFF'S SUMMONS & COMPLAINT

2. This action was filed on May 29, 2019, in New Hampshire Superior Court, Hillsborough County North, bearing Index No. 216-2019-CV-00446. (Ex. 1, Summons and Compl.) Venue is proper in this Court pursuant to 28 U.S.C. §§ 109 and 1442(a) because New Hampshire Superior Court, Hillsborough County North, is located within the District of New Hampshire.

3. On July 2, 2019, 3M was served with the initial Summons and Complaint. (Ex. 1). No other process, pleadings, or orders have been served upon 3M.

4. 3M is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1).[1] *See, e.g.*, *Genereux v. Am. Beryllia Corp.*, 577 F.3d 350, 357 n.9 (1st Cir. 2009) ("Removal under [§ 1442(a)(1)] does not require that all defendants agree to removal."); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) ("Whereas all defendants must consent to removal under section 1441, a federal officer or agency defendant can unilaterally remove a case under section 1442." (citations omitted)); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970, 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999) ("The federal officer removal statute, 28 U.S.C. § 1442, specifically provides that

---

[1] Although their consent is not required, Defendants Tyco Fire Products LP and Chemguard, Inc. have assented to 3M's Notice of Removal.

any action against the United States or any agency or officer thereof in an official or individual capacity for any act under color of law may be removed 'by them' to the federal district court, thus evidencing Congress' intention that such removal not be defeated by the presence and lack of consent to removal of co-defendants." (citation omitted)); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994) ("Section 1442 is an exception to the general rule that all defendants must join in a notice of removal.  When a federal officer removes a case under § 1442, the entire case against all defendants, federal and non-federal, is removed to federal court regardless of the wishes of his [sic] co-defendants." (internal quotations and citations omitted)).

5.      Plaintiff purports to bring this action "as sovereign, as trustee of public trust resources, as an owner of property or interests in property impacted by the Defendants' products, and pursuant to its authority to act as *parens patriae* . . . ." (Compl. ¶ 28).  Plaintiff generally alleges that 3M and the other Defendants have manufactured AFFF products containing perfluorooctane sulfonate (PFOS), perfluorooctanoic acid (PFOA), perfluorononanoic acid (PFNA), and/or perfluorohexanesulfonic acid (PFHxS) and/or their chemical precursors.  (*Id.* ¶¶ 1, 12).  Plaintiff further alleges that these products entered into the stream of New Hampshire's commerce and contaminated land, waters, sediments, and other natural resources. (*Id.*).

6.      As to 3M, Plaintiff asserts claims for negligence (*id.* ¶¶ 236–42), defective design (*id.* ¶¶ 243–49), failure to warn (*id.* ¶¶ 250–57), trespass (*id.* ¶¶ 258–72), and impairment of the public trust (*id.* ¶¶ 273–76).  Plaintiff also asks for enhanced compensatory damages. (*Id.* ¶¶ 290–92).  The same or substantially the same claims were made against the other Defendants in this case.

7. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of New Hampshire Superior Court, Hillsborough County North.

8. By filing a Notice of Removal in this matter, 3M does not waive its rights or the rights of any other Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and 3M specifically reserves its rights to assert any defenses and/or objections to which it may be entitled.

9. 3M reserves the right to amend or supplement this Notice of Removal.

10. If any question arises as to the propriety of the removal of this action, 3M requests the opportunity to present a brief and oral argument in support of removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1)

11. Removal here is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (1) the defendant is a "person" under the statute; (2) the defendant was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) the defendant was acting "under color of" federal office at the time of the allegedly tortious conduct; and (4) the defendant raises a "colorable" federal defense. *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *see also Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989).

12. Removal rights under the federal officer removal statute, 28 U.S.C. § 1442, are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cty. v. Acker*,

4

527 U.S. 423, 431 (1999). This is because § 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). To the contrary, "the statute as a whole must be liberally construed" in favor of removal. *Isaacson*, 517 F.3d at 136.

13. All requirements for removal under § 1442(a)(1) are satisfied here. *Cf., e.g.*, Order, *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (May 24, 2019) ("MDL Order") at 3-6 (denying the State of New York's motion to remand and finding that federal officer removal was proper in a case against 3M and the same other Defendants named in this case when the same claims were brought against 3M and the other Defendants for their role in manufacturing AFFF for use by the Air National Guard and the U.S. Air Force); *Ayo v. 3M Co.*, No. 18-CV-0373, 2018 WL 4781145, *8–9, 13 (E.D.N.Y. Sept. 30, 2018) (same).

**A.     MilSpec AFFF**

14. Since the 1960s, the United States military has used AFFF that meets military specifications ("MilSpec AFFF") on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF in response to deadly, catastrophic fires aboard the aircraft carriers USS Forrestal in 1967 and USS

Enterprise in 1969.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

15. The manufacture and sale of AFFF procured by the military is governed by rigorous military specifications created and administered by Naval Sea Systems Command.[4] All such AFFF products must be "qualified for listing on the applicable Qualified Products List" prior to military procurement.[5] Prior to such listing, a "manufacturer's . . . products are examined, tested, and approved to be in conformance with specification requirements."[6] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.[7] After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[8] Naval Sea Systems Command "reserves the right to perform any of the [quality assurance] inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements."[9]

---

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), http://bit.ly/2mujJds.

[4] *See* Mil-F-24385 (1969). The November 1969 MilSpec and all its revisions and amendments through September 2017 are available at https://tinyurl.com/yxwotjpg.

[5] *Id.* § 3.1.

[6] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[7] *See, e.g.*, Ex. 2, MIL-PRF-24385F(2), at 18 (2017)). The cited MilSpec designates Naval Sea Systems Command as the "Preparing Activity." The "Preparing Activity" is responsible for qualification. *See* Dep't of Defense SD-6, at 3.

[8] Dep't of Defense SD-6, at 1.

[9] Ex. 2, MIL-PRF-24385F(2) § 4.1 (2017).

16.     The MilSpec has always required that AFFF contain "fluorocarbon surfactants"—the class of chemical compounds that includes PFOA, PFOS, PFNA, and PFHxS.[10]  The current MilSpec expressly contemplates that PFOA and PFOS will be used (subject to recently imposed limits) in AFFF formulations.[11]

**B.    The "Person" Requirement Is Satisfied**

17.     The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) and the other Defendants are "persons" under the statute. For purposes of § 1442(a)(1), the term "'person'" includes "corporations, companies, associations, firms, [and] partnerships." *Papp v. Fore-Kast Sales Co. Inc.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *see Isaacson*, 517 F.3d at 135–36 (holding that a non-natural entity is a "person" for purposes of § 1442(a)(1)).

**C.    The "Acting Under" Requirement Is Satisfied**

18.     The second requirement ("acting under" a federal officer) is satisfied when an entity "*assist[s]*, or help[s] *carry out*, the duties or tasks of" a federal officer. *Isaacson*, 517 F.3d at 137. "The words 'acting under' are to be interpreted broadly . . . ." *Id.* at 136 (citation omitted).  Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

19.     The requirement is met here because Plaintiff challenges 3M's (and all other Defendants') alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137.  MilSpec AFFF is a

---

[10] *See* Mil-F-24385 § 3.2 (1969).

[11] *See* Ex. 2, MIL-PRF-24385F(2) § 6.6 & Tables 1, 3 (2017).

7

mission-critical military product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[12]  Accordingly, the military has long depended upon outside contractors like 3M and the other Defendants to develop and supply AFFF. *See Ayo*, 2018 WL 4781145, at *8–9 (holding that Tyco, Chemguard, and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacturing and sale of MilSpec AFFF); *see also* MDL Order at 4 (finding that the "acting under" requirement was satisfied because Tyco demonstrated that it was manufacturing AFFF under the guidance of the U.S. military).

20.  Plaintiff's own allegations confirm that its alleged injuries arise in part from the use of MilSpec AFFF at military sites in New Hampshire and that 3M and the other Defendants were "acting under" federal officers of the Department of Defense and its agencies when manufacturing MilSpec AFFF. Indeed, Plaintiff affirmatively alleges that 3M and the other Defendants made these products for, and sold them to, the U.S. military:

(a) "From the 1960s through 2001, the United States Department of Defense purchased AFFF exclusively from 3M and Tyco/Ansul." (Compl. ¶ 91.)

(b) Defendants designed, manufactured, and sold AFFF to "federal, state, municipal and other . . . departments." (Compl. ¶ 239.)

(c) PFOS, PFOA, PFNA, and/or PFHxS have impacted Plaintiff's natural resources "from the use or storage of AFFF, or the maintenance of equipment used in the application of AFFF, at a number of locations, including but not limited to: the Pease Air Force Base in Newington . . .

---

[12] *Fulfilling the Roosevelts' Vision*, *supra* note 3, at 37.

>[and] New Boston Air Force Station Former Fire Department . . . ." (Compl. ¶ 10.)

21.     In designing, manufacturing and supplying the MilSpec AFFF products at issue, 3M and the other Defendants acted under the direction and control of one or more federal officers. Specifically, 3M and the other Defendants acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.[13]  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the United States Department of Defense.[14]

22.     The applicable MilSpec has always required that AFFF contain constituents from the same class of chemical compounds to which PFOA, PFOS, PFNA, and PFHxS belong.[15]  The current MilSpec expressly contemplates that PFOA and PFOS will be used (subject to recently imposed limits) in AFFF formulations.[16]  Indeed, the September 2017 amendments to the MilSpec recognize that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."[17]

**D.    The Causation Requirement Is Satisfied**

23.     The third requirement, that a defendant's actions were taken under color of federal office "has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137.  Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Id.*  Courts

---

[13] *See* Ex. 2, MIL-PRF-24385F(2) (2017).

[14] *See* Dep't of Defense, SD-6, at 1.

[15] *See* Mil-F-24385 § 3.2 (1969).

[16] *See* Ex. 2, MIL-PRF-24385F(2) § 6.6 & Tables I, III (2017).

[17] *Id.* § 6.6.

"credit Defendants' theory of the case when determining whether [this] causal connection exists." *Id.*[18]

24.     "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack … occurred *while* Defendants were performing their official duties." *Id.* at 137–38 (emphasis in original).  Here, the Plaintiff's claims arise from 3M's and the other Defendants' production and sale of AFFF manufactured to military specifications.  Plaintiff alleges that the presence of PFOS, PFOA, PFNA, and/or PFHxS in AFFF rendered 3M's and the other Defendants' products defective.  3M contends that the presence of such chemicals was required by military specifications.  The conflict is apparent: MilSpec AFFF was developed by 3M and the other Defendants for use by the military and designed to meet specifications established by the Department of Defense.  Military installations, including those in and around New Hampshire, are required to employ MilSpec AFFF.  The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which 3M and the other Defendants could not "comply with both [their] contractual obligations and the state-prescribed duty of care." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 509 (1988); *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order at 5–6 ("Here, New York's claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards.  The Court . . . finds that the causation element of federal officer removal is satisfied here.").

---

[18] The "Acting Under" and "Under Color Of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

**E.     The "Colorable Federal Defense" Requirement Is Satisfied**

25.     The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion of the government contractor defense. Courts have repeatedly held that this defense supports removal under § 1442(a)(1). *See Isaacson*, 517 F.3d at 139 (citing other cases); *Crane Co.*, 771 F.3d at 116–17.

26.     At the removal stage, a defendant need only show that its government contractor defense is colorable. "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139 (citation omitted). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue. A merely 'colorable' defense is sufficient to 'assure the federal court that it has jurisdiction to adjudicate the case.'" *Cuomo*, 771 F.3d at 116 (quoting *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)).[19] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants . . . ." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (citation omitted).

27.     Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States

---

[19] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (citations omitted)).

11

approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

28.    3M has satisfied these elements for purposes of removal.  As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.[20]  3M's and the other Defendants' products appeared on the DOD Qualified Products Listing,[21] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec.[22]  *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products. . . . There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order at 4 (finding Tyco demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

29.    Moreover, the government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.[23]  Indeed, it is clear that the

---

[20] *See* MIL-PRF-24385F(2) (2017).

[21] MIL-F-24385 QPL/QPD History for Type 3 AFFF (June 23, 2016), https://tinyurl.com/y6m9jcxd; MIL-F-24385 QPL/QPD History for Type 6 AFFF (June 23, 2016) https://tinyurl.com/yy3u6vax.

[22] *See* Dep't of Defense SD-6, at 1.

[23] *See, e.g.*, MIL-F-24385 §§ 3.16 & 4.7.16 (Rev. A May 2, 1977).

12

United States has long understood that AFFF may contain or break down into PFOS and/or PFOA, that AFFF constituents can migrate through the soil and potentially reach groundwater, and it has been reported that this may raise environmental or health issues.[24] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[25] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential to cause groundwater contamination."[26] More recently, in a November 2017 report to Congress, the Department of Defense acknowledged the concerns raised by the EPA regarding PFOS and PFOA in drinking water. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires . . . ."[27] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "fluorocarbon surfactants,"[28] and expressly specifies (subject to recently imposed limits) use of PFOS and PFOA in AFFF formulations.[29] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of

---

[24] *See, e.g.*, EPA, Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts, at 1–6 (Nov. 4, 2002) (excerpt).

[25] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), http://www.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[26] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas at 1 (June 14, 1991), https://www.wbdg.org/FFC/AF/AFETL/etl_91_4.pdf.

[27] Dep't of Defense, Aqueous Film Forming Foam Report to Congress 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/y5un3zq8.

[28] Ex. 2, MIL-PRF-24385F(2) § 3.2 (2017).

[29] *Id.* § 6.6 & Tables I, III.

13

PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order at 5 ("As to whether Tyco adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, Tyco points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

30. At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *12.

WHEREFORE, 3M hereby removes this action from New Hampshire Superior Court, Hillsborough County North, to this Court.

        3M Company

        By its Attorneys,

        McLANE MIDDLETON,
        PROFESSIONAL ASSOCIATION

Dated: July 31, 2019         By:_____
        Mark C. Rouvalis, NH Bar #6565
        900 Elm Street, P.O. Box 326
        Manchester, New Hampshire 03105
        Telephone (603) 625-6464

        Michael A. Olsen
        Daniel L. Ring
        Richard F. Bulger
        MAYER BROWN LLP
        71 South Wacker Drive
        Chicago, Illinois 60606
        Tel: (312) 782-0600
        Fax: (312) 701-7711
        molsen@mayerbrown.com
        dring@mayerbrown.com
        rbulger@mayerbrown.com

        *Counsel for Defendant 3M Company*

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing **NOTICE OF REMOVAL,** with its Exhibits, were served on Plaintiff's counsel via email and U.S. Mail, and via email for all other counsel, on July 31, 2019:

| | |
|---|---|
| K. Allen Brooks, Bar # 16424<br>Senior Assistant Attorney General<br>Christopher G. Aslin, Bar # 18285<br>Senior Assistant Attorney General<br>Environmental Protection Bureau<br>New Hampshire Dept. of Justice<br>33 Capitol Street<br>Concord, NH 03301<br>(603) 271-3679<br>k.allen.brooks@doj.nh.gov<br>christopher.aslin@doj.nh.gov<br>*Counsel for Plaintiff* | Ellen Nunno Corbo<br>Taylor Colicchio LLP<br>425 5th Avenue, 5th Floor<br>New York, NY 10016<br>(212) 661-1700<br>ecorbo@tcslawyers.com<br>*Counsel for Defendant Buckeye Fire Equipment Company* |
| Keith E. Smith, Esq.<br>Greenberg Traurig, LLP<br>1717 Arch St., Suite 400<br>Philadelphia, PA 19103<br>(215) 988-7843<br>smithkei@gtlaw.com<br>*Counsel for Defendant National Foam, Inc.* | Jonathan I. Handler<br>Day Pitney LLP<br>One International Place<br>Boston, MA 02110<br>(617) 345-4600<br>jhandler@daypitney.com<br>*Counsel for Defendant Kidde-Fenwal, Inc.* |
| David Himelfarb<br>McCarter & English, LLP<br>265 Franklin Street<br>Boston, MA 02110<br>(617) 449-6555<br>dhimelfarb@mccarter.com<br>*Counsel for Defendants E.I. DuPont De Nemours and Company and The Chemours Company, LLC* | Joseph G. Petrosinelli<br>Liam J. Montgomery<br>Williams & Connolly LLP<br>725 Twelfth Street, N.W<br>Washington, DC 20005<br>(202) 434-5547<br>jpetrosinelli@wc.com<br>*Counsel for Tyco Fire Products, LP & Chemguard, Inc* |

Dated: July 31, 2019    */s/ Mark C. Rouvalis, Esq.*